**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Kalise S. White,

       Petitioner,

v.

Nicole English, Warden,

       Respondent.

Civ. No. 12-527 (MJD/JJK)

**REPORT AND**
**RECOMMENDATION**

---

Kalise White, Federal Correctional Institution – Waseca, P.O. Box 1731, Waseca, Minnesota, 56093, Petitioner, *pro se*.

Lonnie F. Bryan, Assistant United States Attorney, counsel for Respondent.

---

JEFFREY J. KEYES, United States Magistrate Judge

      This matter is before the undersigned Magistrate Judge of the District Court on the Petition of Kalise White for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The matter has been fully briefed by the parties, and it has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For the reasons discussed below, this Court concludes that Petitioner's habeas corpus Petition should be denied, and this action should be dismissed with prejudice.

## I. BACKGROUND

      In 2004, Petitioner was convicted in the United States District Court for the Western District of Missouri on several criminal charges involving possession and

distribution of cocaine.  She was sentenced to 120 months in federal prison, to be followed by a five-year term of supervised release.  (Doc. No. 4, Declaration of Julie Groteboer ("Groteboer Decl.") ¶ 4, Attach. B, at 1.)  Petitioner has been serving her sentence at the Federal Correctional Institution in Waseca, Minnesota ("FCI-Waseca"), during all times relevant to this action, and she remains confined there at this time.  With the benefit of expected "good time credit," Petitioner's projected release date (i.e., the date when she is expected to complete her federal prison term), is July 30, 2013.  (Groteboer Decl. ¶ 5.)

Like most federal prisoners, Petitioner is eligible for a transfer to a "Residential Re-entry Center" ("RRC"), or "halfway house," before her final release date.  Petitioner's eligibility for RRC placement was reviewed by the federal Bureau of Prisons ("BOP"), in December 2011.  At that time, it was determined that Petitioner should be assigned to a RRC for 151 to 180 days – i.e., that she should spend the last five or six months of her prison term in a half-way house.  (Doc. No. 5, Declaration of Joe Van Rooy ("Van Rooy Decl.") ¶ 3.)  Petitioner disagreed with that determination, and filed two administrative grievances asking for a longer RRC assignment.  (Van Rooy Decl. ¶¶ 4-5.)  In response to the second grievance, Petitioner was informed that her RRC assignment would be reconsidered.  She was advised to withdraw her grievance, and she did so.  However, Petitioner reserved the right to file a new administrative grievance if she continued to be dissatisfied with the BOP's plans

for her RRC assignment.  (Van Rooy Decl. ¶¶ 6-7.)

In January 2012, Petitioner's eligibility for RRC assignment was reconsidered, and this time it was determined that Petitioner should be assigned to a RRC for the last seven months of her prison term.  (Van Rooy Decl. ¶ 8.) Petitioner was informed of that new determination in February 2012.  However, Petitioner was not satisfied with a seven-month RRC assignment, and she therefore filed her present habeas corpus Petition challenging the legality of that assignment.

Petitioner filed her habeas corpus Petition on February 22, 2012.  (Doc. No. 1.)  Two weeks later, on March 6, 2012, she filed a new administrative grievance challenging her new seven-month RRC assignment.  (Van Rooy Decl. ¶¶ 8-9; Groteboer Decl. ¶ 6.[1])  Approximately two months after commencing this action, Petitioner informed the Court that her new administrative grievance (i.e., the one filed March 6, 2012), had been denied, and her subsequent appeal to the BOP's Regional Office had also been denied.  (Doc. No. 7, Pet'r's Reply Mem., Attach. 1, Ex. 2; Doc. No. 8, Attach. 1, Pet'r's Addendum.)  There is nothing in the

---

[1]   Respondent states that the administrative grievance filed on March 6, 2012, pertained to the original 151-180 day RRC assignment, rather than the subsequent seven-month assignment.  (Doc. No. 3, Gov't Resp. to Petition for Writ of Habeas Corpus 11.)  However, that statement appears to be contradicted by the record.  It appears to this Court that the original RRC assignment (151-180 days) was challenged in Administrative Grievance No. 672792-F1 received on January 19, 2012, and the subsequent RRC assignment (seven months) was challenged in Administrative Grievance No. 678853-F1 received on March 6, 2012.  (Groteboer Decl. ¶ 6, Attach. C at 4.)  This apparent discrepancy has no bearing on the resolution of Petitioner's claims.

3

current record showing that Petitioner completed the administrative grievance process by taking a further appeal to the BOP's Central Office.

Needless to say, Petitioner is still dissatisfied with the BOP's plan for transferring her to an RRC for the final seven months of her prison term.  She believes the BOP did not act "in good faith" with regard to her RRC assignment, and the BOP should be compelled to assign her to an RRC for twelve months – not seven.  This Court disagrees.

## II.  DISCUSSION

### A.  Failure To Exhaust Administrative Remedies

Respondent initially contends that this action should be summarily dismissed, without addressing any of Petitioner's claims on the merits, because Petitioner did not exhaust all of her available administrative remedies before seeking judicial review of her claims.  This argument is well taken.

The Eighth Circuit Court of Appeals has repeatedly stated that federal prisoners must exhaust their available administrative remedies before seeking federal habeas corpus relief under 28 U.S.C. § 2241.  *United States v. Chappel*, 208 F.3d 1069, 1069-70 (8th Cir. 2000) (*per curiam*); *Kendrick v. Carlson*, 995 F.2d 1440, 1447 (8th Cir. 1993); *Leighnor v. Turner*, 884 F.2d 385, 387 (8th Cir. 1989); *Willis v. Ciccone*, 506 F.2d 1011 (8th Cir. 1974); *United States v. Sithithongtham*, 11 F. App'x. 657, 658 (8th Cir. 2001) (*per curiam*) (unpublished opinion).

4

The BOP has provided an administrative remedy process for federal prisoners, which is set forth at 28 C.F.R. §§ 542.10-.19.  Those regulations prescribe four steps that must be taken to satisfy the exhaustion requirement: (1) an inmate must first present her claim to a prison staff member and seek an informal resolution of the claim; (2) if the claim is not resolved to the inmate's satisfaction, she must then present a formal written Request for Administrative Remedy (Form BP-9), to a designated prison official; (3) if the prisoner is not satisfied with the response to her Request for Administrative Remedy, she must appeal to the apposite BOP Regional Director (Form BP-10); and (4) if the prisoner is still dissatisfied, she must take a final appeal to the General Counsel in the BOP's Central Office (Form BP-11).  To fully exhaust her administrative remedies, a federal prisoner must complete each of these four steps.

The Eighth Circuit has identified four important objectives that are promoted by the exhaustion of administrative remedies requirement.  First, exhaustion helps to ensure a more complete development of the factual record before the matter is brought into federal court.  Second, exhaustion gives the reviewing court the benefit of whatever special knowledge and experience the administrative agency may have to offer.  Third, the exhaustion requirement acknowledges the autonomy of administrative agencies, and the authority that Congress has vested in them.  And fourth, to the extent that claims can be resolved at the administrative level, the exhaustion requirement promotes judicial

economy.  *Mason v. Ciccone*, 531 F.2d 867, 870 (8th Cir. 1976); *see also*

*McCarthy v. Madigan*, 503 U.S. 140, 145 (1992) (discussing rationale for

exhaustion of administrative remedies requirement).

　　In this case, Petitioner has deprived Respondent and the Court of the

potential benefits of the administrative remedy process because she did not

exhaust her administrative remedies before commencing this action.  Indeed,

Petitioner filed her current habeas corpus Petition before starting the second step

of the administrative remedy process (submitting a formal Request for

Administrative Remedy).  Moreover, it appears, as of now, that Petitioner still has

not completed the administrative remedy process, because there is no indication

that she has completed (or even started) the final appeal to the Central Office.

　　Petitioner contends that it would have been "futile" for her to exhaust her

administrative remedies before commencing this action because (a) the BOP

probably would not have granted her request for a twelve-month RRC

assignment, and (b) by the time she would have satisfied the exhaustion

requirement, it would have been too late to grant her a twelve-month RRC

assignment because she would already be less than twelve months away from

her final release date.  These arguments, however, are wholly unsubstantiated.

Petitioner has simply assumed that she would not obtain any meaningful relief

through the administrative remedies process, and she has offered nothing to

support that assumption.  This Court notes that Petitioner's first administrative

challenge to her first proposed RRC assignment was at least partially successful. In response to Petitioner's first request for an informal resolution of her claim, a BOP case manager conducted a new review of her RRC assignment and concluded that her RRC assignment should be longer than 151-180 days, as initially proposed.  Given Petitioner's past success with the administrative remedies process, there is no reason to accept her unsupported assertion that it would have been fruitless to exhaust her administrative remedies before seeking relief in federal court.  Furthermore, if Petitioner had promptly pursued her administrative remedies, she still could have brought her claims into federal court (if necessary) before those claims were rendered moot by the arrival of her scheduled release date.  Thus, this Court rejects Petitioner's futility argument and concludes that this case is presently dismissible solely because Petitioner failed to exhaust all of her available administrative remedies before she filed her current habeas corpus Petition.

The Court recognizes, however, that Petitioner might still be able to exhaust her administrative remedies before a final judgment is entered in this case.  That could happen if Petitioner has already filed a final appeal with the BOP's Central Office, and if that final appeal is decided adversely to Petitioner before this case is closed.  Were that to occur, then Petitioner's current habeas corpus claims could be addressed on the merits here, even though Petitioner failed to exhaust her administrative remedies for those claims before she filed her

petition.  *See Leighnor*, 884 F.2d at 388 (stating that where prisoner belatedly exhausted his administrative remedies after filing his habeas petition, his initial non-exhaustion was effectively "cured" and his substantive claims could be considered on the merits).  Because it is possible that Petitioner's non-exhaustion could be "cured" before a final judgment is entered in this case, this Court will also consider Petitioner's habeas claims on the merits.

### B. Federal Law Governing RRC Assignments

Federal law directs the BOP to provide appropriate housing for federal prisoners, and gives the BOP broad discretion to fulfill that responsibility as it sees fit.  The apposite federal statute provides that –

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering –
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence –
> > (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> > (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers

> under this subsection, there shall be no favoritism given to prisoners of high social or economic status.  The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.  The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.  Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person.

18 U.S.C. § 3621(b).

The federal statute that pertains specifically to RRC placement was amended a few years ago by the enactment of the "Second Chance Act of 2007" ("SCA").  The applicable statute, 18 U.S.C. § 3624(c)(1), currently provides as follows:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

This statute clearly authorizes the BOP to assign an inmate to a RRC for any period of time up to the statutory maximum of twelve months.  However, it is equally clear that the BOP retains substantial discretion with regard to RRC assignments.  The exercise of that discretion is effected by 18 U.S.C. § 3624(c)(6), which provides that –

> The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of

9

the enactment of the Second Chance Act of 2007, which shall
ensure that placement in a community correctional facility by the
Bureau of Prisons is –
> (A) conducted in a manner consistent with section
> 3621(b) of this title [quoted above];
> (B) determined on an individual basis; and
> (C) of sufficient duration to provide the greatest
> likelihood of successful reintegration into the community.

The BOP has adopted regulations governing RRC assignments, as required by

§ 3624(c)(6).  Those regulations provide that –

> Inmates will be considered for pre-release community confinement in
> a manner consistent with 18 U.S.C. section 3621(b), determined on
> an individual basis, and of sufficient duration to provide the greatest
> likelihood of successful reintegration into the community, within the
> time-frames set forth in this part.

28 C.F.R. § 570.22.  According to both the statute (§ 3624(c)(6)), and the

regulations, the BOP must determine when an inmate will be assigned to a RRC

by conducting an individualized assessment of that inmate's particular

circumstances, using the five criteria set forth in 18 U.S.C. § 3621(b).

### C.  Petitioner's RRC Assignment

In this case, the BOP plans to send Petitioner to a RRC for seven months,

and she wants to go there for twelve months.  Petitioner, however, has not clearly

explained *why* she believes the Court should declare the BOP's seven-month

plan to be illegal, and compel the BOP to accept Petitioner's own twelve-month

plan instead.

The current habeas corpus Petition lists three grounds for relief.  (Doc. No.

1, Petition ¶ 9.)  In "Ground 1," Petitioner contends that her seven-month RRC

assignment should be vacated because the BOP officials at FCI-Waseca were "not acting 'in good faith'" when they determined the length of her RRC assignment.  (*Id.*)  In "Ground 2," Petitioner contends that the BOP officials "do not follow the statute/law."  (*Id.*)  And in "Ground 3," she contends that the BOP officials do "not follow Second Chance Act directives."  (*Id.*)

Petitioner's final two grounds for relief (Grounds 2 and 3), are not readily distinguishable from each other.  She has not explained how the BOP's alleged failure to "follow the statute/law" is different from the alleged failure to "follow Second Chance Act directives."  More importantly, Petitioner has not explained why she believes the BOP did not follow either "the statute/law" or "Second Chance Act directives."  In fact, the record plainly indicates that the BOP *did* follow the applicable statutes, regulations, and "Second Chance Act directives." Petitioner's case manager and other officials at FCI-Waseca conducted an individualized assessment of Petitioner's RRC needs, applying the criteria prescribed by § 3624(c) and § 3621(b).  (Van Rooy Decl. ¶¶ 6, 8.)  Moreover, Petitioner candidly acknowledges that she "is not disputing the fact that Unit Team made the assessments" that are required by the Second Chance Act and related regulations, but rather, she is contending "only that the conclusion reached to grant her additional RRC placement was not considered 'in good faith' based on her actual deficiencies, needs or obligations."  (Doc. No. 7, Pet'r's Reply Mem. 6.)  Thus, this Court finds that the only real claim for relief presented

here is found in Ground 1 of the Petition – i.e., that the BOP's determination of

Petitioner's RRC assignment was not made in good faith.

### D.  Alleged Lack of Good Faith

Giving Petitioner's submissions the benefit of liberal construction, this Court

can discern several distinct allegations that the BOP did not act in good faith with

regard to her RRC assignment.

**(i) Job skills, housing needs, felon status.**  Petitioner first

contends there was a failure to "act 'in good faith' in determining her [request] for

additional RRC placement because FCI-Waseca staff did not consider her

marketable job skills, housing needs or her detrimental social status as a 'felon' in

refusing to provide her with 12 months placement."  (Doc. No. 1, Petition, Attach.

1 at 5; *see also* Doc. No. 7, Pet'r's Reply Mem. 3, 4.)  However, this allegation is

clearly belied by the record.  The FCI-Waseca staff recommendation to the

Warden includes the following information:

> White plans to release to 'homeless' status in the Kansas City,
> Missouri area, where her 13 year old son currently resides with his
> maternal great-grandmother.  White explains she hopes to re-obtain
> custody of her son as soon as possible as her grandmother's health
> is failing, and her son is developing behavioral issues.  The
> grandmother is not willing to allow White to reside in her home, and
> White's mother has recently married a former inmate who is currently
> on federal probation.  White has never held employment, but hopes
> to obtain employment with the assistance of RRC staff, and
> eventually continue her education in the field of Business.  She was
> sentenced in the Western District of Missouri.
>
> Considering her instant offense behavior and criminal history,
> as well as the length of her sentence, the unit team carefully

considered her request for an extended placement in an RRC.
Although she has consistently received the generous financial
support of family and friends throughout her term of incarceration,
she has no employment history, and prior to·incarceration, supported
herself and her family primarily via illegal drug sales. She has no
employment plans established to date.  The unit team is
recommending a 210 day RRC placement to assist her in her
transition back into the community, believing this would be sufficient
time for her to secure a residence and employment, accrue release
funds, and reunite with her family.

(Van Rooy Decl.  ¶ 8, Attach. D.)

This report to the Warden plainly shows that the BOP *did* consider

Petitioner's job skills, housing needs, and her "detrimental social status as a

'felon.'"  All of those factor were considered.  Therefore, Petitioner's initial lack-of-

good-faith allegation is rejected.

(ii) **Resources at RRC.**  Petitioner also alleges that the BOP failed

to consider the resources available at the RRC facility to which she will be

released.  (Doc. No. 7, Pet'r's Reply Mem. 3, 4.)  This argument is based on the

first of the prisoner housing factors listed in § 3621(b) – i.e., "the resources of the

facility contemplated."  The record shows that BOP officials have not yet been

able to assess the resources at the specific RRC to which Petitioner will be

released because the location of that facility has not yet been determined.  (Van

Rooy Decl. ¶ 8 ("I could not comment on the resources of the facility

contemplated because the specific RRC is determined by the CCM."[2]).)  Based

---

[2] "CCM" stands for Community Corrections Manager, which is a component of the
BOP that oversees and manages RRC assignments.  (Van Rooy Decl. ¶ 11.)

on this candid acknowledgment, Petitioner contends that the BOP did not act in

good faith.  This argument is rejected for two reasons.

First, the mere fact that the BOP selected a RRC as the most appropriate

form of pre-release custody (as opposed to, for example, home confinement),

suggests that the BOP has considered what would be the best way to provide the

resources Petitioner will need to successfully reintegrate into society.  In other

words, the BOP has considered where Petitioner should spend the last part of her

sentence, and the BOP has determined that the type of resources normally

available at a RRC will best satisfy Petitioner's pre-release needs.  Therefore,

Petitioner has failed to establish that the BOP did not consider "the resources of

the facility contemplated."

In addition, Petitioner has not shown how the BOP's alleged failure to

consider the resources available at a specific RRC might affect the overall length

of her RRC assignment.  Petitioner is not presently challenging the *location* of her

prerelease confinement; she is challenging only the *duration* of such confinement.

She has not explained why she believes she would have been assigned to an

RRC for twelve months, rather than seven months, if the BOP had considered the

resources available at the particular RRC to which she will be assigned (wherever

that might be).

> **(iii) Family situation.**  Petitioner further contends that the BOP did

not act in good faith when determining her RRC placement, because her "family

14

situation" was not considered.  In particular, Petitioner is concerned about her minor son, whose sole support is provided by a great-grandmother who has cancer.  However, the BOP has *not* failed to consider those facts.  Indeed, those very facts apparently prompted the BOP to re-consider Petitioner's original RRC assignment of 151-180 days.  (Van Rooy Decl. ¶¶ 5-6.)  Moreover, the subsequent FCI-Waseca staff report to the Warden (recommending the seven-month RRC assignment) specifically mentioned Petitioner's "13 year old son [who] currently resides with his maternal great-grandmother."  (Van Rooy Decl. ¶ 8, Attach. D.)  The same report also specifically noted that Petitioner's "grandmother's health is failing, and her son is developing behavioral issues." (*Id.*)  Thus, it is simply not true that the BOP failed to consider Petitioner's family situation.

**(iv) Rehabilitation programs.**  Finally, Petitioner's submissions include several references to an alleged lack of prison rehabilitation programs. (Doc. No. 1, Petition, Addendum at 3, 5; Doc. No. 7, Pet'r's Reply Mem. 3, 5, 6, 8.)  She apparently believes that the BOP failed to act in good faith when determining her RRC assignment, because the BOP allegedly failed to provide adequate rehabilitation opportunities during the course of her imprisonment.  This argument must also be rejected.

First, Petitioner has offered no evidence to support her conclusory averments about the alleged lack of rehabilitation opportunities.  At the same

time, Respondent's submissions show that Petitioner *did* have access to

rehabilitation programs, including a GED program (which Petitioner declined to

complete), a "money smart" program, a resume writing workshop, a job readiness

program, a mock job fair, job search classes, psychology services, an "'I Am

Free' Personal Growth and Development class," chapel services, and a bible

study group.  (Van Rooy Decl. ¶ 6, Attach. C.)  Furthermore, Petitioner has not

shown that a RRC will provide more or better rehabilitation programs than those

available in prison.  Nor has Petitioner explained how the alleged lack of prison

rehabilitation programs supposedly shows that the BOP did not act in good faith

by assigning her to a RRC for seven months, instead of twelve months.

In sum, after carefully examining all of Petitioner's arguments, this Court

finds that Petitioner has failed to substantiate her claim that the BOP did not act

in good faith.  A lack of good faith "'is not simply bad judgment or negligence, but

rather it implies the conscious doing of a wrong because of dishonest purpose or

moral obliquity; . . . it contemplates a state of mind affirmatively operating with

furtive design or ill will.'"  *LeMaster v. Hollingsworth*, No. CIV. 11-4019, 2011 WL

3322227, at *5 (D.S.D. 2011) (citing *United States v. Gilbert*, 198 F.3d 1293,

1299 (11th Cir. 1999)) (quoting *Black's Law Dictionary* 139 (6th ed.1990)).

Petitioner has not shown that any dishonesty or ill will was involved in the BOP's

decision regarding her RRC assignment.  She obviously thinks the BOP

misjudged the evidence, but even if that is true (which this Court finds no reason

to believe), it does not mean the BOP failed to act in good faith.

Petitioner has submitted a chart that purportedly shows the statistical breakdown of the BOP's "RRC Placements by Security Level" as of October 2011.  (Doc. No. 1, Attach. 2, Ex. 4.)  According to that chart, Petitioner is currently scheduled to receive a longer RRC assignment than 95.3 percent of all inmates who share her "low" custody classification.  Only 1.7 percent of all similarly situated inmates will receive an RRC assignment longer than the seven months given to Petitioner.  These statistics alone effectively refute the notion that Petitioner's RRC assignment was the result of dishonesty, ill will, or any other lack of good faith.

## III.  CONCLUSION

For the reasons discussed herein, this Court concludes that Petitioner is not entitled to a writ of habeas corpus in this matter.  She has not demonstrated that she is legally entitled to be transferred to a RRC any earlier than the date that has been determined by the BOP.  This Court therefore recommends that Petitioner's habeas corpus Petition be denied, and that this action be dismissed with prejudice.

### RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

17

1.  Petitioner's application for a writ of habeas corpus under 28 U.S.C.

§ 2241 (Doc. No. 1), be **DENIED**; and

2.  This action be **DISMISSED WITH PREJUDICE**.


Date: July 9, 2012

                                       *s/ Jeffrey J. Keyes*
                                       JEFFREY J. KEYES
                                       United States Magistrate Judge


Under D.Minn. Loc. R. 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **July 23, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen days** after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.